Sidney BROWN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 4566.

District of Columbia Court of Appeals.

Argued Nov. 4, 1968.

Decided April 25, 1969.

Harvey Rosenberg, Silver Spring, Md., for appellant. Marvin E. Preis, Washington, D. C., also entered an appearance for appellant.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge and KELLY and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

After a trial without a jury, appellant Sidney Brown was convicted of violating the District of Columbia Housing Regulations[1] and sentenced to 60 days imprisonment. Though the defendants named in the information were First National Realty Corporation by and through its President, Sidney Brown, and Sidney Brown, personally, the record contains no judgment or sentence as to the corporation. It was agreed at oral argument that Sidney Brown, individually, is the only appellant.[2]

This case requires that we set forth the facts in considerable detail. After a routine inspection of Clifton Terrace Apartments, a notice was sent on October 4, 1967, by the Department of Licenses and Inspections of the District government to First National Realty Corporation, the owner, informing the company of several deficiencies found in the boilers by a Smoke and Boiler inspector. This notice also stated:

> Before any of the above repairs are started subject the boilers to a 22½ pound hydrostatic test and notify this office so that an inspector can determine if additional repairs are necessary. Do not use the boilers until this work has been completed and approval for their use has been granted by this Section.

No time limit was set for completion of the work.

On October 27, 1967, a hydrostatic test of the boilers was made in the presence of a District boiler inspector.[3] As a result, a "follow-up" notice was sent on October 31, 1967, to First National Realty Corporation requiring certain "additional repairs." This notice stated that when these additional repairs were completed the Smoke and Boiler Section must witness another hydrostatic test. Again, no date was set for compliance. The corporation was specifically warned not to use the boiler until approval was granted by the boiler inspector.

On November 2, 1967, while the boiler work was in progress, the Supervisor of the Court Unit of the Department of Licenses and Inspections and a housing inspector inspected a number of units in Clifton Terrace to determine whether there were violations of the minimum temperature requirements of the regulations.[4] None was found. They observed during the inspection, however, that the heating plant was "inoperative." The following day, November 3rd, an order was delivered to the corporation office requiring that heat be provided not later than noon of November 8th. Before that deadline, a further inspection of six apartments was made on November 6th, this time by the Supervising Housing Inspector who found that certain of the apartments did not meet the minimum temperature requirements. As a result, still another notice was served on the corporation at 5:10 p.m., on November 6th. This notice shortened the deadline by requiring that heat be supplied for "all occupied habitations and bathrooms" by noon of November 7th.

An information was filed the next day (November 7th) charging First National Realty Corporation and Sidney Brown, personally, "as licensee", with failure to comply with the order of November 6th in failing to meet the minimum temperature requirement in several listed apartments, citing District of Columbia Housing Regulations, § 2407. The Corporation Counsel's office thereupon requested by telephone that Mr. Brown come to court that day,

1. District of Columbia Housing Regulations, § 2407 (1955).

2. Since the corporation is not here on appeal, the absence of judgment and sentence as to it is not before us.

3. There is indication that the delay of some three weeks in making the hydrostatic test in the presence of a boiler inspector may have been ascribable to appellant but this was not established with any certainty by the government.

4. *Supra* n. 1.

which he did.[5]   A copy of the information was served and he was notified that trial would commence the same day.

When the case was called for trial after lunch, appellant immediately informed the court that he was without counsel; that he had tried to reach his attorney, who had "knowledge of this matter" but he was out of town; and that consequently he needed a "couple of days" continuance. The government opposed this request, citing the "urgency of this matter" and the concern of the tenants who were without heat in their apartments. No mention was made of the traditional right of a criminal defendant for a reasonable opportunity to prepare his defense. The court denied the request for a continuance.

Appellant then requested permission to telephone the office of his attorney with the hope that one of the lawyers there could come to court to represent him. The court granted a recess for this purpose and cautioned appellant that "[w]e're waiting on you." After a brief recess, appellant reappeared with an attorney to represent him.

At the outset, counsel for appellant stated that the case had come to his attention "within the last few moments"; that appellant's regular attorney was in Boston; and that he had come to court because he was advised that an emergency had arisen. He also advised the court that he was proceeding to trial because he had been told that a request for a continuance had been denied.

There was confusion throughout the trial as to the precise offense with which appellant was charged. Appellant conceded that the apartments listed in the information did not meet the minimum temperature requirements. The government took the position that it must prove a failure to meet minimum temperature requirements in the apartments on November 6th, the date of the last notice, and on November 7th after the noon deadline contained in that notice. The trial court ruled at times during the trial that it would accept no evidence concerning the heat condition in the apartments on November 7th, though testimony was adduced as to this on other occasions. This inconsistency finally culminated in a statement by the court that "[a]s far as the Court is concerned, this proceeding is under the notice of October the 4th", the date of the notice requiring the initial boiler repairs. It is not clear what the court intended to convey by this statement. In actuality, the information charged only a failure to comply with the notice of November 6th. Appellant, on the other hand, took the position at trial that he could not properly be charged with failure to meet minimum temperature requirements in the apartments because the boilers necessarily were dismantled to perform the additional repairs required by the boiler inspector; and that the latter understood dismantling was required to make the repairs ordered.

Appellant makes several contentions, most of which are made for the first time on appeal. He argues that due to the haste with which the trial was commenced and the denial of his request for a continuance he was denied due process of law and his right to effective assistance of counsel. He further contends that having been ordered by one division of the District government to make repairs to the boilers requiring their dismantling, it was an arbitrary exercise of police power to charge him at the instance of another division of the government with failure to maintain minimum temperature in the apartments.[6] Further, says appellant, the trial court misconceived the issue at trial in that the court viewed the offense alleged as being a violation of Section 2407 of the Housing Regulations in failing to maintain sufficient heat on November 6th;

---

5. No warrant was issued pursuant to the information.

6. One housing inspector testified that when he made his inspection to test the temperature in the apartments, he was not aware that boiler repairs were being performed pursuant to an order of the Smoke and Boiler Section.

and that this was erroneous as the information charged a failure to comply with the order of November 6th which required that the heat requirement be met by noon of November 7th. Lastly, appellant contends that the penalty provisions contained in the Housing Regulations are so vague and uncertain as to violate the constitutional guaranties of due process of law.

 It was wrong to deny appellant a continuance in the circumstances of this case. While prompt trials and a vigorous administration of the criminal laws are extremely desirable, a defendant is entitled to a reasonable opportunity to prepare his defense. The time required may vary from case to case. In this instance, it was unseemly to propel appellant into trial within a few hours after he was telephoned to come to the courthouse and receive a copy of the information filed that day. While, as we later explain, we do not reach all of appellant's principal contentions, our review of this record indicates that they are not without substance, indicating that the defense required substantial preparation for trial. The statements made to the court by appellant and the attorney retained on extremely short notice clearly warranted a brief continuance.

In these circumstances, we hold that the denial of a continuance was a clear abuse of discretion and constituted prejudicial error. Creed v. United States, D.C.Mun.App., 156 A.2d 676 (1959). *Cf.* White v. Ragen, 324 U.S. 760, 763–764, 65 S.Ct. 978, 89 L.Ed. 1348 (1945).

 While it is unnecessary to reach other contentions made by appellant,[7] there is one other consideration which warrants comment since we are remanding for a new trial. The record does not show the penalty provision under which appellant received the 60 day sentence but apparently the court was invoking Section 3303 of the Housing

Regulations which provides for a fine not to exceed $300 or imprisonment not to exceed 90 days. This section is found in Chapter 3 of the Housing Regulations which deals with revocation of licenses. The information charged failure to comply with a notice which cited the minimum temperature requirements contained in Chapter 2 of the Housing Regulations (Section 2407). This chapter contains a penalty provision which permits of a fine not to exceed $300 or imprisonment not to exceed 10 days (Section 2104). In our view, it is Section 2104 which applies to the violation charged. *Cf.* Brown v. Southall Realty Company, D. C.App., 237 A.2d 834, 837 (1968).

Reversed and remanded with instructions for a new trial.

---

7. As we have indicated, some of appellant's arguments are being made for the first time on appeal. We say this uncritically in view of the haste with which the trial commenced. Not surprisingly, the record is generally insufficient to enable clear judgments to be made on some positions taken here.