**UNITED STATES of America and Rodney J. Krysztof, Appellees,**

v.

**BOBART TRAVEL AGENCY, INC., and Lois C. Parish, Respondents,**

and

**Robert L. Bennett, Intervenor-Appellant.**

**Nos. 753, 818, Dockets 82–6278, 82–6209.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1982.

Decided Feb. 4, 1983.

Robert L. Bennett, intervenor-appellant pro se.

James F. Miller, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, Attys., Tax Division, Dept. of Justice, Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty., Gustave J. DiBianco, Fr. U.S. Atty., Syracuse, N.Y., of counsel), for appellees.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

Robert L. Bennett appeals from an order of the United States District Court for the Northern District of New York, Howard G. Munson, Judge, holding him in civil contempt for his failure to produce certain documents and records pertaining to the tax liability of Bobart Travel Agency, Inc., for the years 1977, 1978, and 1979. The court had ordered enforcement of an Internal Revenue summons on January 28, 1982, and February 26, 1982. Although he subsequently complied in respect to the year 1977, Bennett was ordered held in contempt on July 30, 1982. We reverse and remand.

The facts may be stated briefly. In connection with an Internal Revenue Service investigation of Bobart Travel Agency, Inc., a summons was issued to the corporation and its secretary, Lois C. Parish. When the corporation and Parish failed to comply, the United States and Rodney J. Krysztof, an IRS agent, petitioned for enforcement under I.R.C. §§ 7402(b) and 7604(a). Bobart and Parish were ordered to show cause why they should not testify. Parish filed a mo-

tion in opposition on the basis that she could not "get access to any books or records which Robert L. Bennett may have with respect to the dissolved corporation." Bennett represented to the court that he was the president and sole shareholder of Bobart and that he was the "only proper party, *if* there be any, who *might* have access to any books and records." Bennett, without opposition by the Government, was permitted to intervene. He then conceded that Bobart's books and records for 1977 existed and were "available" through him, but he refused to turn over the records because Bobart was engaged in tax court litigation and the Government had the records in connection with that litigation.

On January 28, 1982, the district court issued an order of enforcement but stayed it until February 12, 1982, pursuant to Fed. R.Civ.P. 62(a), to afford Bennett and Parish the opportunity to obtain counsel for Bobart.[1] Noting that since "the intervenor Robert L. Bennett has asserted in open court, that he is in fact in possession of the records referred to in the enforcement Order," the court changed its order on February 26, 1982, to require "such other person or persons ... who are in possession of the testimony and have possession, custody, control, or access to the tangible things required by this Order" to comply with the summons.

At the show-cause hearing on July 12, 1982, Bennett claimed in his opening statement that "at this particular time I am not in possession or care, custody or control of any alleged records, if there be any." When later called by the Government to testify, Bennett objected because "I do not have counsel here to aid me in my testimony." The court instructed Bennett to testify and advised him that "I will also instruct

you that you may invoke your privilege against self-incrimination at any time that it is applicable." During the remainder of the proceedings Bennett repeatedly invoked the Fifth Amendment when asked questions about the existence or whereabouts of Bobart's books and records pertaining to the years 1978 and 1979, and stood by his claim that although he was in possession of Bobart's 1977 records, he was not required to produce them because Bobart's 1977 taxable year was in litigation before the tax court.

The district court found on July 30, 1982, that Bennett had control over the material and was able to produce it. Accordingly, the court ordered him to comply with the summons enforcement order or face incarceration. This ruling was made although the court was fully aware of the Ninth Circuit's holding in *United States v. Rylander,* 656 F.2d 1313, 1317 n. 5, 1319 (9th Cir.1981), *cert. granted,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 464 (U.S.1982) that while a custodian cannot refuse to produce documents on the ground that it might incriminate him, he may assert a bona fide Fifth Amendment objection to questions regarding the location of documents. *See also United States v. Meeks,* 642 F.2d 733 (5th Cir.1981) (witness cannot be forced to choose between freedom from incarceration for civil contempt and self-incrimination). Bennett ultimately complied with the order as to the 1977 books and records. The district court denied a motion for a stay as to the 1978 and 1979 records but this court granted Bennett a stay pending the resolution of his appeal.

Bennett's claim that his Fifth Amendment rights have been abridged in this contempt context presents thorny and unsettled issues,[2] but the hazards of those issues

---

1. On February 16, 1982, Bobart and Parish filed a motion for stay, and further asserted control of the records, claiming that "the books, records, papers, or other data specified in the Order ... are the property of Robert L. Bennett, and in part Lois C. Parish" and therefore protected by the Fourth and Fifth Amendments. The motion was denied on February 18, 1982.

2. Based upon the *Rylander* and *Meeks* cases as well as *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), and *United States v. O. Henry's Filmworks, Inc.,* 598 F.2d 313, 318 (2d Cir.1979), appellant argues that his conviction of civil contempt cannot be grounded upon the assertion of his privilege against self-incrimination since his inability to

underscore that Bennett should not have been denied the assistance of counsel: To guide a client between the Scylla of contempt and the Charybdis of waiving his Fifth Amendment privilege requires not only a lawyer but an astute one. This court flatly held in *In re Di Bella,* 518 F.2d 955 (2d Cir.1975), that an individual is entitled to counsel in a civil contempt proceeding under 28 U.S.C. § 1826. *Id.* at 958–59.

Moreover, if Bennett is an indigent, he is entitled to appointed counsel. *See Lassiter v. Department of Social Services,* 452 U.S. 18, 25–27, 101 S.Ct. 2153, 2158–2159, 68 L.Ed.2d 640 (1981) (an indigent litigant has a right to appointed counsel when, if he loses, he may be deprived of his physical liberty); *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972); *Di Bella,* 518 F.2d at 959; *see also United States v. Anderson,* 553 F.2d 1154, 1155 (8th Cir.1977) (per curiam); *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir.1973); *United States v. Sun Kung Kang,* 468 F.2d 1368, 1368–69 (9th Cir.1972) (per curiam). The Government argues that Bennett had every opportunity to obtain counsel had he so desired, but disregards Bennett's claim that he was denied counsel when he had requested it, even though he claimed that he was indigent and had previously been found to be indigent by Judge Munson in another case that is also now before this court. *United States v. Bennett,* No. 82–1280 (2d Cir. filed Aug. 3, 1982). Here, however, the court made no inquiry as to indigency, even though contempt is an area of the law in which counsel's advice is often indispensible.

The Government argues that in any event counsel would be unable to do anything for Bennett because he never raised the question of his ability to comply during the summons enforcement proceeding and the court was therefore entitled to presume he could comply. *Maggio v. Zeitz,* 333 U.S. 56, 64–65, 68 S.Ct. 401, 405–406, 92 L.Ed. 476 (1948) so held in the analogous context of a bankruptcy turnover-order proceeding. But this does not mean that the presumption that summoned records continue to exist and remain in the witness's possession continues conclusively through the contempt proceeding. As *Maggio v. Zeitz* expressly held, 333 U.S. at 69–78, 68 S.Ct. at 407–412, it was open to the bankrupt/potential contemnor to claim at the contempt proceeding that he could no longer comply. He is permitted "to deny his present possession and to give any evidence of present conditions or intervening events which corroborate him." 333 U.S. at 76, 68 S.Ct. at 411. This is so that he may not be directed "to do an impossibility" and then be punished for refusal to perform it. *Id.* at 69, 68 S.Ct. at 408. Thus, notwithstanding the district court's earlier finding that Bennett possessed and controlled the sought-after documents and records, Bennett was nevertheless entitled to claim (as he did) in the civil contempt proceedings that he no longer had possession of the documents and to testify as to any conditions or events that might corroborate him.[3] And as to this,

---

comply with the court's order compels testimony which might be incriminatory. We note that Judge Munson doubted the *bona fides* of Bennett's Fifth Amendment *Rylander* assertion. In addition, the Government argues that in *Rylander* it was never established that the defendant possessed the records and that in *O. Henry's Filmworks* the sworn denial of possession was set forth in an affidavit submitted at the summons enforcement hearing. In terms of *Curcio,* the Government says that Bennett has been held in contempt not for invoking a claim of privilege but for not producing records which the court concluded he possessed, and it is noted that the Court in *Curcio* observed that the petitioner there "might have been proceeded against for his failure to produce the records

demanded by the subpoena *duces tecum.*" 354 U.S. at 127 n. 7, 77 S.Ct. at 1151 n. 7. We leave the not simple issues of contempt in this Fifth Amendment situation to another day when perhaps they will have been elaborated upon by the Supreme Court in light of its grant of certiorari in the *Rylander* case.

**3.** In such event the "credibility of his denial is to be weighed in the light of his present circumstances." *Maggio v. Zeitz,* 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948). But the court must consider "all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break." *Id.*

insofar as the contempt hearing was concerned, Bennett had a right to the advice of counsel. *In re Di Bella, supra.*

We are therefore required to reverse and remand for further proceedings with directions to the court to advise Bennett as to his right to counsel at any further contempt hearing which may be ordered and, if the court finds him indigent, to appoint counsel for him before proceeding further.

Judgment reversed; case remanded.