**Louis ZAPATA, Appellant,**

v.

**Raenelle H. ZAPATA, Appellee.**

**Raenelle H. ZAPATA, Appellant,**

v.

**Louis ZAPATA, Appellee.**

**Nos. 83–759, 83–785.**

District of Columbia Court of Appeals.

Argued Jan. 9, 1985.

Decided Oct. 29, 1985.

Rehearing Denied Nov. 15, 1985.

Louis Zapata pro se.

Sharon Nelson, Washington, D.C., for Raenelle Zapata.

Before PRYOR, Chief Judge, and BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

In this domestic relations proceeding, the trial court adjudicated both parties in contempt of a court order which enjoined them from interfering with the quiet enjoyment of each other's property. On appeal each party challenges the contempt adjudication on the ground that there was insufficient evidence to support it. We hold that there was substantial evidence to support the court's finding that Mr. Zapata violated the court order, but none to support its finding that Mrs. Zapata also violated the order. Accordingly, we affirm the contempt adjudication of Mr. Zapata and reverse that of Mrs. Zapata.

I

In April 1980 Judge Doyle of the Superior Court granted Mr. Zapata's uncontested petition for divorce. Dividing the marital property, Judge Doyle awarded Mr. Zapata the marital home at 1340 Valley Place, S.E., and awarded Mrs. Zapata the house next door at 1342 Valley Place, which the parties also owned. Approximately one month later Mr. Zapata entered 1342 Valley Place, took some property which belonged solely and exclusively to Mrs. Zapata, and removed a shed from her back yard.[1]

Mrs. Zapata filed a motion for contempt. At the hearing on her motion, Judge Doyle declined to hold Mr. Zapata in contempt, but enjoined him from trespassing on Mrs. Zapata's property and from "interfering in any way, directly or indirectly, with the quiet enjoyment of [the] premises by [her] and/or any tenant residing on the premises...." Judge Doyle further ordered Mr. Zapata to "construct or cause to be constructed a chain link fence of at least four (4) feet high, in a professional and workmanlike manner in the rear of the premises," stating that the fence "shall act as rear security for the property ... shall replace the shed that was removed by [Mr. Zapata] ... and shall serve the purpose for which it is being constructed." Finally, Judge Doyle also enjoined Mrs. Zapata from "interfering in any way, directly or indirectly, with the quiet enjoyment of the premises" at 1340 Valley Place, owned by Mr. Zapata.

---

1. The shed was a 500-pound structure which stood between the back yard and an adjacent alley.

In September 1982 Mr. Zapata filed a motion for contempt, alleging that Mrs. Zapata had interfered with the quiet enjoyment of his property and thus had violated Judge Doyle's order. Specifically, he alleged that Mrs. Zapata had (1) summoned the police when he erected a fence between his property and her property, which the court had "specifically permitted and encouraged" him to build, (2) informed Washington Gas Light Company that its employees could trespass on his property in order to install a new gas meter which would "encroach and occupy [his] property," (3) trespassed or ordered a third party to trespass on his property, and removed or ordered a third party to remove a barricade which he had placed there to prevent employees of the gas company from reading her gas meter, and (4) stood on the sidewalk in front of his house and berated him in a loud and abusive manner.

Mrs. Zapata denied these allegations and filed a cross-motion for contempt. In that motion she alleged that Mr. Zapata had (1) erected or caused to be erected an iron fence on the side of her porch, (2) interfered with her quiet enjoyment of the premises at 1342 Valley Place, and that of her tenant as well, and (3) failed to build a fence in the back yard of 1342 Valley Place which complied with Judge Doyle's order.

A hearing was held on both motions before another judge. The evidence established that Mr. Zapata had attached a wrought iron fence to the front porch of Mrs. Zapata's house. Mrs. Zapata testified that the fence was dangerous, that she had asked Mr. Zapata to remove it, and that he had refused to do so. Mr. Zapata conceded that he had attached the fence to the front porch of Mrs. Zapata's house, but maintained that the fence and the section of the porch to which it was attached were on his

side of the property line.[2] He also stated that Judge Doyle had authorized him to erect the fence[3] and that he thought Mrs. Zapata would be "very pleased" with it.

There was also testimony that employees of the gas company had removed a gas meter from the basement of Mrs. Zapata's house and attached it to the outside of the house. Mr. Zapata testified that the gas meter was placed "half on her property and half on my property" and that access to the meter could only be had through his property. He therefore called the gas company and asked that it move the meter. The company, however, notified him that "the party at 1342 Valley Place" had informed its employees that the meter was on Mrs. Zapata's property and directed them not to move it. Mr. Zapata then erected a barricade in front of the meter to make it impossible for the gas company to read it, but some time later he discovered that someone had removed the barricade. Mrs. Zapata testified that the meter had been moved from the basement to the outside of her house at the request of the gas company.[4] She stated that the meter was entirely on her side of the property line, and she specifically denied Mr. Zapata's allegations that she informed the gas company that its employees could trespass on his property and that she removed, or ordered a third party to remove, the barricade that he had erected.

Finally, Mrs. Zapata testified that Mr. Zapata had failed to erect a chain link fence "in a professional and workmanlike manner in the rear of the premises" as required by Judge Doyle's order. She said that the fence he did install "was nothing more than a fancified chicken wire fence because it was flimsy ... [a]nd it didn't afford any

2. Mr. Zapata did not present any competent evidence to support this assertion.

3. Although Judge Doyle did order Mr. Zapata to build a fence between his property and that of his ex-wife, it was to be built "in the rear of the premises." Judge Doyle did not authorize Mr.

Zapata to erect the fence on the front porch of Mrs. Zapata's house, nor was there any evidence that Mrs. Zapata authorized him to do so.

4. Mrs. Zapata said she would have no objection to putting the meter back in the basement.

protection to [the] back yard." [5] Mr. Zapata disputed these allegations. He said that the fence was supported by a "three-eighths inch galvanized cable with a turnbuckle," that the tensile strength of that cable was 3500 pounds, and that it was "built to last forever."

At the conclusion of the hearing, the court found both parties in contempt. It specifically found that both parties had, "through a series of actions, engaged in provocative, uncivil, harassing, childish, petty, and vindictive acts which [were] in violation of Judge Doyle's order," and that they had done their best "to sabotage and undermine compliance with Judge Doyle's order and to avoid any amicable solution of the ongoing disputes between [themselves]." The court ordered Mr. Zapata to pay Mrs. Zapata $250, his proportionate cost of building a fence which complied with Judge Doyle's order, and directed him to remove the fence from Mrs. Zapata's porch "which was put up without court permission and without any agreement from [Mrs. Zapata]." It ordered Mrs. Zapata to make arrangements to move the gas meter back into the basement of her house.

The court also sentenced each party to a fifteen-day jail term. Execution of the jail sentences was suspended on the condition that the parties and Mrs. Lewis, the tenant at 1342 Valley Place, "take all their existing and future disputes to the Citizens' Complaint Center for mediation." The court stated in its contempt order that it was imposing "these sanctions ... in the hope that these parties and [Mrs.] Lewis can begin manifesting some civilized rational behavior."

On appeal, Mrs. Zapata contends that the contempt adjudications were criminal in nature, that there was no evidence that she intended to violate Judge Doyle's order, and that the court therefore erred in finding her in contempt. Mr. Zapata, on the other hand, contends that the contempt adjudications were civil in nature, that there was no evidence that he violated Judge Doyle's order, and that the court therefore erred in holding him in contempt. Both parties also challenge the court's denial of their respective motions for attorney's fees.

## II

■ "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (citations omitted); *accord, e.g., Bolden v. Bolden*, 376 A.2d 430, 432–433 (D.C.1977). Criminal contempt, on the other hand, is a sanction imposed to punish a contemnor for intentionally violating a court order. *Cheff v. Schnackenberg*, 384 U.S. 373, 377–378, 86 S.Ct. 1523, 1524–1525, 16 L.Ed.2d 629 (1966); *Douglass v. First National Realty Corp.*, 177 U.S.App.D.C. 409, 413, 543 F.2d 894, 898 (1976). In determining whether a contempt adjudication in any given case is civil or criminal, "[t]he pivotal inquiry ... is 'what does the court primarily seek to accomplish by imposing sentence?' If the purpose is to coerce compliance, the penalty is civil; if the goal is punishment for past disobedience, the exaction is criminal." *Id.* (footnotes omitted), quoting from *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966).

■ In this case the court sentenced each party to a fifteen-day term of imprisonment which, although penal in nature, was obviously intended to coerce compliance with its order that the parties "take

---

5. Some time later, when Mrs. Zapata was having some other work done on her house, she instructed the workmen to take down the fence "which by then was almost down anyway." She subsequently obtained estimates for a new six-foot fence with a gate. These estimates, two of which included fencing for an area not specified in Judge Doyle's order, were admitted into evidence over Mr. Zapata's objection.

all their existing and future disputes to the Citizens' Complaint Center for mediation." The sentences will not be executed unless the parties violate that portion of the court's order. For this reason we conclude that the contempt adjudications were civil, not criminal; consequently, "it matters not with what intent [the parties] did the prohibited act[s]." *McComb v. Jacksonville Paper Co., supra,* 336 U.S. at 191, 69 S.Ct. at 499. Proof of intent is therefore irrelevant; we must affirm the judgment if there is evidence in the record to support the court's finding that the parties violated Judge Doyle's order. *See, e.g., Bolden v. Bolden, supra,* 376 A.2d at 433.

■ With respect to Mr. Zapata, there was abundant evidence to support the court's finding of contempt. First, Mr. Zapata conceded that he had attached a wrought iron fence to the front porch of Mrs. Zapata's house. Several photographs of the fence were introduced into evidence. Mrs. Zapata testified, moreover, that the fence was dangerous, that she had asked Mr. Zapata to remove it, and that he had refused to do so. The erection of this fence was plainly in violation of Judge Doyle's order; see note 3, *supra.* Second, Mr. Zapata also admitted that he had placed a barricade in front of Mrs. Zapata's gas meter in order to prevent the gas company from reading it. Third, Mrs. Zapata testified that the fence which Mr. Zapata put up in the back yard did not comply with Judge Doyle's order because it "was nothing more than a fancified chicken wire fence ... it was flimsy ... [a]nd it didn't afford any protection to [the] backyard." She introduced exhibits which corroborated this testimony.

This evidence amply supports the court's finding that Mr. Zapata violated Judge Doyle's order that he refrain from "interfering in any way, directly or indirectly, with the quiet enjoyment of [the] premises by [Mrs. Zapata] and/or any tenant residing on the premises" and that he construct a chain link fence in a "professional and workmanlike manner" which would "serve the purpose for which it [was] being constructed." The sanctions which the court imposed, moreover, were well within its discretion.[6]

■ With respect to Mrs. Zapata, however, we find no evidence in the record to support the court's finding that she violated Judge Doyle's order, *i.e.,* that she "interfer[ed] in any way, directly or indirectly, with the quiet enjoyment" of the premises owned by Mr. Zapata. Specifically, there is no testimony from Mr. Zapata, or any other

---

**6.** Mr. Zapata advances several other claims of error, which are all without merit. He contends that his right to due process of law was violated because the court curtailed his cross-examination of Mrs. Zapata, and did not permit him to call rebuttal witnesses or to give a summation. The record refutes both contentions. It reveals that the court gave Mr. Zapata wide latitude in cross-examining Mrs. Zapata and acted well within its discretion in limiting that examination. *See, e.g., Beynum v. United States,* 480 A.2d 698, 706–707 (D.C.1984). Furthermore, Mr. Zapata never requested leave to call any rebuttal witnesses or to give a summation, and thus we cannot say that the court prohibited him from doing so.

Mr. Zapata also maintains that the court erred in admitting, and relying upon, the estimates that Mrs. Zapata obtained for the construction of a fence which exceeded the specifications of Judge Doyle's order. Although two of these estimates included fencing for an area not specified in the order, this fact was evident from the estimates themselves, and the court specifically stated that it was "well aware that Judge Doyle's order call[ed] for a shorter fence than that for which Mrs. Zapata got estimates and [that it took] this into account in setting ... payment at an amount lower than any of the estimates." On this record we find no error.

Finally, Mr. Zapata argues that the court erred in failing to "rule upon the harassment issue of the broken sewer line." Although the court did not expressly rule on this issue, a District of Columbia plumbing inspector testified that he received a complaint from Mr. Zapata concerning the sewer line in Mrs. Zapata's house, and that he inspected it but did not discover any problems with the sewer. Given this testimony, which was uncontradicted, we hold that the trial court's failure to make an express finding on this point was not error. Assuming *arguendo* that the court made an implied finding that Mrs. Zapata was not in contempt with respect to the sewer, the inspector's testimony would support such a finding.

■ ▬▬▬▬▬▬▬

evidence, to support the allegations in Mr. Zapata's motion for contempt that Mrs. Zapata (1) informed the gas company that its employees could trespass on Mr. Zapata's property, (2) removed, or ordered a third party to remove, the barricade in front of the gas meter, or (3) stood on the sidewalk in front of Mr. Zapata's house and berated him in a loud and abusive manner.[7] There being no evidence of any violation of Judge Doyle's order by Mrs. Zapata, we hold that the court erred in finding her in contempt.

### III

"It has long been established in American jurisprudence that attorney's fees are not ordinarily recoverable by a prevailing litigant unless a statute or a contract specifically provides for an award of such fees." *Washburn v. Washburn*, 475 A.2d 410, 413 (D.C.1984) (citations omitted). However, if "a party brings or maintains an unfounded suit or withholds action to which the opposing party is patently entitled ... and does so in bad faith, vexatiously, wantonly, or for oppressive reasons, reasonable attorney's fees *may* be allowed." *1901 Wyoming Avenue Cooperative Ass'n v. Lee*, 345 A.2d 456, 464–465 (D.C.1975) (citation and footnote omitted; emphasis added).

■ Mr. Zapata was not the prevailing party, and thus he is not entitled to an award of attorney's fees. *See, e.g., Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684, 103 S.Ct. 3274, 3276, 77 L.Ed.2d 938 (1983); *In re Antioch University*, 482 A.2d 133, 137 (D.C.1984); *cf. Grubbs v. Butz*, 179 U.S.App.D.C. 18, 548 F.2d 973 (1976) (motion for attorney's fees denied as premature because litigation had not yet ended,

and thus there was not a "prevailing party"). In any event, his contention that the court abused its discretion in denying his motion for attorney's fees is totally frivolous. The evidence established that he had "engaged in provocative, uncivil, harassing, childish, petty and vindictive acts," as the trial court found,[8] and that it was he, not Mrs. Zapata, who violated Judge Doyle's order. We see no abuse of discretion; on the contrary, we think it would have been an abuse to grant the motion.

■ With respect to Mrs. Zapata's motion for attorney's fees, we are unable to say that the court abused its discretion in denying the motion. However, because the court based its denial, at least in part, on its finding that Mrs. Zapata had violated Judge Doyle's order—a finding which we now hold to be erroneous—we remand this case to the trial court for reconsideration of Mrs. Zapata's motion.[9]

In No. 83–759 (Mr. Zapata's appeal) the judgment is affirmed. In No. 83–785 (Mrs. Zapata's appeal) the judgment is reversed, and the case is remanded for reconsideration of Mrs. Zapata's motion for attorney's fees.

Affirmed in part, reversed in part, and remanded.

---

7. Although there was evidence that Mrs. Zapata summoned the police when she discovered that Mr. Zapata had erected a wrought iron fence on her front porch, as Mr. Zapata alleged in his motion for contempt, this did not constitute a violation of Judge Doyle's order.

8. The court made this finding with respect to both parties; see page 908, *supra.*

9. We assume, without deciding, that Mrs. Zapata is seeking an award of attorney's fees under

D.C.Code § 16–911(a)(1) (1981), since there seems to be no other statutory authority for such an award. On remand the trial court shall first determine whether that statute (or any other that may come to the court's attention) gives it the power, as a matter of law, to grant Mrs. Zapata's motion. If the court concludes that it has such power, it shall then consider the motion *de novo* on the merits.