Gerald THOMPSON, Appellant,

v.

Teresa THOMPSON, Appellee.

No. 84–1127.

District of Columbia Court of Appeals.

Submitted Nov. 19, 1987.
Decided May 26, 1989.

Lloyd T. Stanley III filed a brief, for appellant.

Before MACK and STEADMAN, Associate Judges, and REILLY, Senior Judge.

STEADMAN, Associate Judge:

In a Family Division proceeding involving wife abuse, appellant husband was held in criminal contempt of court and sentenced to 15 days in jail. He argues on appeal that the trial court improperly denied his requests for a continuance, and thereby violated his right to effective assistance of counsel. In denying appellant's request for a continuance, the trial court expressly took into account the fact that appellant had had several weeks' notice of the hearing and hence ample time to secure counsel. We conclude that the trial court improperly considered this advance notice to be a relevant factor, inasmuch as appellant was not notified of his right to court-appointed counsel until the date of trial. We reverse.

### I.

On December 21, 1983, appellant consented to a Civil Protection Order entered pursuant to D.C.Code §§ 16–1001 to 16–1006 (1981 & 1988 Supp.) ("Proceedings Regarding Intrafamily Offenses"). The order provided, *inter alia*, that appellant "shall not molest, assault, or in any manner threaten or physically abuse" his wife, Teresa Thompson. Several months later, on July 19, 1984, Teresa Thompson filed a Motion to Adjudicate Contempt, alleging that appellant had violated the protection order in choking her by the neck and throwing a rock through her bedroom window. On July 24, 1984, appellant was served with a Notice of Hearing and Order to Appear, directing appellant to appear at a hearing on the motion to be held on August 16, 1984. This notice did not inform appellant of any right to counsel at the hearing.

Appellant arrived at the hearing without counsel. Upon realizing at the outset of the hearing that the case was one that might result in a jail term for appellant, the trial court asked for an attorney to be provided to represent appellant under the

Criminal Justice Act, D.C.Code §§ 11–2601 to 11–2609 (1981 & 1988 Supp.) ("Representation of Indigents in Criminal Cases"). When appellant's newly-appointed counsel arrived at court, he immediately requested a continuance. The trial court denied his request: "No, I don't want to continue the case. The allegations are serious. This is an old CPO and I would like to go forward today." The trial court then allowed counsel approximately twenty minutes to consult with his client.

At the end of this time, when the trial court called the case, appellant's counsel again requested a continuance, "in view of the serious nature of the penalties involved." Agreeing that the case was a serious one, the trial court nevertheless denied this second request as well: "Mr. Thompson had notice of today's proceeding.... [He] had about three weeks or so to secure counsel of his own.... Weighing the possible danger to the Petitioner and the need to dispose of these allegations as well as the fact that Mr. Thompson had plenty of time to obtain counsel, we're going to proceed at this time."[1] In response, appellant's counsel reiterated his position saying, "I do not feel that I would be carrying out my obligation to my client effectively to represent his interests under the Court's ruling." The trial court acknowledged this position, and then proceeded with the hearing, calling Teresa Thompson to the stand to testify.

Teresa Thompson testified that appellant came into her house on July 18, 1984, went into her bedroom and choked her, and that her brother had to push appellant off of her. She also testified that on July 19, 1984, a rock came through her window, and that she saw appellant's back as he was running into the woods immediately after the rock was thrown. Appellant's counsel cross-examined her, asking questions regarding the terms of the protective order, her limited vision of the person who threw the rock through the window, and the absence of her brother to testify at the contempt hearing.

Appellant's counsel then declined to call appellant to the stand because he had "not had an opportunity fully to go over with him what his testimony would be." The court gave appellant's counsel five or ten more minutes to talk with appellant, indicating that it would rule that afternoon. Upon calling of the case, appellant's counsel again objected to the denial of his requests for a continuance, stating "[a]gain, for the record, I would just state my objection to the expedited nature of these proceedings and would state that I believe my client's constitutional rights are being violated...." The court acknowledged that counsel was proceeding under the order of the court.

Appellant took the stand to testify. He admitted having entered his wife's bedroom on July 18, 1984, but denied having threatened her or choked her. He also denied throwing the rock through his wife's window.

At the close of the hearing, the trial court found that while the proof was insufficient as to the rock-throwing incident, it was convinced beyond a reasonable doubt that appellant had assaulted his wife at her home on July 18, 1984. The court, therefore, found appellant in contempt of court and sentenced him to 15 days in jail.[2]

## II.

Ordinarily, the decision to grant or deny a continuance rests in the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.

---

1. Although the court had previously stated to appellant that "[y]ou must have counsel to represent you," the court interjected at this point that he "has been appointed counsel by the Court out of an excess of caution." The reference could be to the uncertainty whether appellant qualified for court-appointed counsel. There is no showing to the contrary in the record, and he appears before us represented by court-appointed counsel.

2. D.C.Code § 16–1005(f) (1988 Supp.) provides that a violation of any order issued under its provisions shall be punishable as contempt. Super.Ct. Intra–Fam.R. 12(e) provides that such contempt may be punished by a fine of not more than $300 or by imprisonment for not more than six months or both. At the time of this case, this penalty was contained in Rule 9.

*District of Columbia v. Mitchell*, 533 A.2d 629, 653 (D.C.1987). An exercise of the trial court's discretion may be set aside, however, where the record discloses that in exercising its discretion, the trial court considered a material improper factor in reaching its decision. We find this to be such a case.[3]

The trial court quite correctly concluded here that appellant, facing a jail sentence for what the court treated as criminal contempt, was entitled to court-appointed counsel. In *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the Supreme Court held that a defendant in a trial for criminal contempt has a due process right to be represented by counsel. *See also In re Wiggins*, 359 A.2d 579, 581 & n. 5 (D.C.1976) (listing due process rights of a defendant in a criminal contempt proceeding, including representation by counsel). Though the *Oliver* Court did not expressly state whether this right included a right to *appointed* counsel, we believe that at the minimum subsequent cases mandate this right in "indirect" criminal contempt proceedings[4] which result in the imprisonment of the contemnor. Holding that the right to counsel does not depend upon the classification of an offense, but upon whether the defendant is actually imprisoned, the Supreme Court, in *Argersinger v.*

*Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972), stated that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."[5] More recently, the Court has indicated that the right to appointed counsel applies even in certain civil proceedings resulting in a loss of physical liberty. *See, e.g., Lassiter v. Department of Social Services*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981) ("[I]t is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel ..."). Indeed, the federal circuit courts of appeals have interpreted these cases as implying a right to appointed counsel not only in criminal contempt cases, but also in civil contempt proceedings resulting in the imprisonment of the contemnor. *See Sevier v. Turner*, 742 F.2d 262, 266–67 (6th Cir.1984); *Ridgway v. Baker*, 720 F.2d 1409, 1413–15 (5th Cir.1983) (and cases cited therein); *United States v. Bobart Travel Agency*, 699 F.2d 618, 620 (2d Cir.1983).[6]

Moreover, "where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a

---

**3.** Appellant argues that this case falls within the parameters of our decisions that where a defendant raises a question of ineffective assistance of counsel *prior* to trial, the trial court is obligated to make an in-depth examination of the issue. *See Pierce v. United States*, 402 A.2d 1237 (D.C.1979); *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). No such examination was undertaken here. In his brief before us, appellant is specific in listing some half-dozen significant pretrial actions that his counsel was deprived of by the refusal to grant the continuance and that might have been material to his defense. In light of our disposition of the present appeal, we need not rule on this point here.

**4.** Where a court imposes a sanction for the purpose of punishing a contemnor for the intentional violation of a court order, the contempt is classified as a criminal contempt. *Zapata v. Zapata*, 499 A.2d 905, 908 (D.C.1985). If the conduct constituting the contempt occurs out of the presence of the court, it may be further

characterized as "indirect" or "constructive" contempt. *See generally* 1 W. LaFave & A. Scott, Jr., Substantive Criminal Law § 1.7(e) (1986); Super.Ct.Crim.R. 42. The right to counsel in Civil Protection Order criminal contempt cases in the District of Columbia has a statutory as well as a constitutional basis. *See Cloutterbuck v. Cloutterbuck*, 556 A.2d 1082, 1084 (D.C.1989).

**5.** It is the actual punishment imposed that, perhaps oddly, retroactively determines the right. *See Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (Constitution does not require a state trial court to appoint counsel for a criminal defendant who is charged with a statutory offense for which imprisonment upon conviction is authorized but not in fact imposed).

**6.** We need not reach here the question of the right to counsel in either civil or summary contempt proceedings. *Cf. Commonwealth v. Crawford*, 466 Pa. 269, 352 A.2d 52 (1976) (four-to-three decision upholding right to counsel in summary criminal contempt).

request.... [W]hen the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished 'whether or not the accused requested the appointment of counsel.'" *Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962) (quoting in part from *McNeal v. Culver,* 365 U.S. 109, 111 n. 1, 81 S.Ct. 413, 415 n. 1, 5 L.Ed.2d 445 (1961)). Furthermore, there is no presumption that a defendant knows of his constitutional right to counsel. *Wood v. United States,* 75 U.S.App.D.C. 274, 286–87, 128 F.2d 265, 277–78 (1942); *Evans v. Rives,* 75 U.S.App.D.C. 242, 248, 126 F.2d 633, 639 (1942). Thus, we have held that under the Sixth Amendment, defendants must be affirmatively advised both of their right to counsel and that "free counsel would be provided for them if they could not afford to retain their own." *Gibson v. District of Columbia,* 221 A.2d 715, 717 (D.C.1966).[7] Here, nothing in the notice gave appellant any inkling of the fact that the proceeding to which he was summoned entitled him to court-appointed counsel if he could not afford his own, nor is there any indication that he had such knowledge from any other source. Nor, indeed, did the notice indicate that the contempt charged would be treated as criminal rather than civil, or the fact that an adjudication of contempt could result in imprisonment.

Under these circumstances, it could not be held against him that he had not earlier sought counsel. The trial court thus considered an improper factor in denying the continuance when it gave weight to "the fact that Mr. Thompson had plenty of time to obtain counsel." The judgment is reversed. *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979) (if trial court's discretionary decision is supported by improper reasons, "reversal likely is called for"); *Brown v. District of Columbia,* 252 A.2d 513, 516 (D.C.1969) (denial of continuance when attorney retained on extremely short notice constituted prejudicial error).[8]

*Reversed.*

MACK, Associate Judge, dissenting:

This case is about an alleged abuse of discretion on the part of a trial court in refusing to grant a continuance—certainly an allegation which triggers support in this court only in rare instances where there may be a resulting denial of due process or a fair trial. *See, e.g., Brown v. District of Columbia,* 252 A.2d 513, 516 (D.C.1969); *Creed v. United States,* 156 A.2d 676, 678 (D.C.1959); *see O'Connor v. United States,* 399 A.2d 21, 28 (D.C.1979); *Feaster v. Feaster,* 359 A.2d 272, 273 (D.C.1976).

This case is *not* about the right to counsel, *see* U.S. CONST. amend. VI (1791); the right to appointed counsel, *see Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962), or the right to counsel of one's own choice, *see Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). Appellant had counsel. Appellant had appointed counsel. Moreover, despite the strained assumption of the majority, this case is not about the lack of notice to appellant that he would need counsel. At stake was a hearing on the claim that appellant had violated a Civil Protection Order. The order itself, consented to, and signed by appellant on December 21, 1983, stated in capital letters and bold print that "failure to comply with this order may result in fine *or imprisonment*" (emphasis added). Given appellant's consent and the clear pronouncement

---

**7.** *Cf. Miranda v. Arizona,* 384 U.S. 436, 468, 473, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966) ("[W]e will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.... As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right [to appointed counsel] can there be assurance that he was truly in a position to exercise it").

**8.** It may be that a permissible alternative disposition of this appeal would be a remand for a renewed exercise of trial court discretion considering only proper factors. *Cf. Wright v. United States,* 508 A.2d 915, 919–20 & n. 3 (D.C. 1986). We need not reach that issue here. Appellant sought no stay pending appeal and has long since served his fifteen-day sentence. We think it "just in the circumstances" to put a final end to this matter based on events almost a half-decade past. D.C.Code § 17–306 (1981).

of possible penalties, he must have known that the filing of a claim charging noncompliance with the order, if proven, would subject him to either fine or imprisonment. Indeed, at the hearing for noncompliance, appellant testified that he understood that if he violated the Civil Protection Order he would be subject to imprisonment for six months and a fine of $1,000.

Thus it was that on July 19, 1984, seven months after appellant had signed the Civil Protection Order, Mrs. Thompson had filed a Motion to Adjudicate Contempt in which she alleged that her husband, appellant, "choked [her] with his nails [around] her neck and threw a rock through her bedroom window." On July 24, 1984, appellant was served personally with a Notice of Hearing and Order to Appear which informed him of the nature of the contempt claim and the date (August 16, 1984) of the the hearing. On this record, the majority's conclusion that the notice did not indicate that "an adjudication of contempt could result in imprisonment" is farfetched. On the face of the Motion to Adjudicate Contempt, a copy of which was attached to the notice, the relevant code sections (D.C.Code § 16–1001 *et seq.* (1988 Supp.)) alluding to the Civil Protection Order and the penalty for its violation were cited to provide appellant with notice of the nature of his offense. Appellant was on notice of the possibility of incarceration, and certainly, therefore, was on notice that he should obtain counsel to undertake his representation.

Moreover, this case is *not* about ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). While appointed counsel strenuously objected to going to trial, it is not made clear to us how (and the record belies that) counsel was ineffective. We are not told why a continuance would have made any difference. Appellant did not make "a showing that such continuance [was] 'reasonably necessary for a just de-

termination of the cause.' " *O'Connor v. United States, supra,* 399 A.2d at 28 (citation omitted).[1] Here the facts were straightforward and the issue was narrowly defined (*i.e.,* whether or not appellant violated the Civil Protection Order); appellant, while denying any violent or assaultive conduct directed towards his wife, conceded that he entered his wife's bedroom (on the date in question); and the trial court, in weighing the credibility of the testimony presented at the hearing, found beyond a reasonable doubt that appellant assaulted his wife. "Under D.C.Code § 17–305(a) (1981), our review of such findings is extremely limited: we must treat them as presumptively correct unless they are clearly erroneous or unsupported by the record. ... Moreover, since the trial court heard the testimony and was in a position to evaluate the witnesses' credibility, we defer to its resolution of conflicts in the testimony." *Auxier v. Kraisel,* 466 A.2d 416, 418 (D.C.1983); *accord Hummel v. Koehler,* 458 A.2d 1187, 1191 (D.C.1983).

Finally and most basically, this case is *not* about an abuse of discretion. In weighing the factors of appellant's history of violent conduct towards his wife, the narrowness of the issue, and the simplicity of the facts, the trial court properly considered advance notice in its denial of the continuance. The decision to grant or deny a continuance rests in the sound discretion of the trial court; and in the absence of an abuse of discretion, we will not disturb the court's decision. *See District of Columbia v. Mitchell,* 533 A.2d 629, 653 (D.C.1987). The trial court did not err in considering advance notice (*i.e.,* the length of time between the notice of a violation of a protective order and a hearing thereupon). Advance notice was extremely relevant to appellant's good faith in seeking a continuance for the alleged purpose of obtaining counsel; good faith was crucial to considerations which caused appellant to be placed under the protective order in the first place. The trial court weighed the asserted need for a continuance against the possibili-

---

1. I note that appellee was not represented by    counsel at the contempt hearing.

ty of physical danger to appellant's wife.[2] There was no abuse of discretion.

I respectfully dissent.

---

2. The trial court's concern that there be no further delays in this case appears well-founded. Almost a month had passed after the appellant had allegedly tried to choke his wife before a contempt hearing was held. Moreover, the appellant, as noted, had a history of violent conduct against his wife. As one commentator has concluded, in cases involving domestic violence, "[t]he timing of orders is critical. Studies of wife beating hypothesize a 'cycle of violence.' In order to prevent further beatings which are part of the cycle, immediate help may be necessary." *Restraining Order Legislation for Battered Women: A Reassessment,* 16 U.S.F. L.Rev. 703, 728 (1982).