**Gary CLOUTTERBUCK, Appellant,**

v.

**Juanita CLOUTTERBUCK, Appellee.**

No. 87–927.

District of Columbia Court of Appeals.

Argued Oct. 12, 1988.
Decided April 5, 1989.

David Jonathan Sitomer, for appellant.

Joan S. Meier, with whom Susan Deller Ross, Washington, D.C., and Karen G.H. Baker were on the brief, for appellee.

Susan M. Hoffman, Naomi R. Cahn, Washington, D.C., and Bernadette Sargent were on the brief for amicus curiae, District of Columbia Coalition against Domestic Violence.

Before MACK, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

Juanita Cloutterbuck petitioned the trial court for a Civil Protection Order (CPO) restraining her husband, appellant Gary Cloutterbuck, from threatening or harming her. Gary Cloutterbuck moved for appointment of counsel. On appeal, he challenges the denial of that motion, arguing that as an indigent party he was entitled to appointed counsel in a proceeding that could result in an order that he would be required to obey or face possible imprisonment. He also argues that without benefit of counsel he was unable to comprehend the nature and implications of the protection order and that his consent to the order was not fully informed. We conclude that the trial court properly denied appellant's motion and that under all the circumstances, including his past experience with the CPO process, his assertion that he was unable to understand the order to which he consented is unpersuasive. We therefore affirm the ruling of the trial court.

## I.

▮ Before the Superior Court, present counsel for appellant filed in appellant's behalf a motion for appointment and payment of counsel which the court denied. On the day the motion was denied, appellant, without counsel, consented to a CPO entered pursuant to D.C.Code §§ 16–1001 to –1006 (1988). The order provided that appellant "shall not molest, assault or in any manner threaten or physically abuse" the petitioner, Ms. Cloutterbuck, and that he "shall stay away from the petitioner's home, person, workplace and school." The order further provided that appellant could have monthly visitation with Donnetta Y. Austin, the minor child of the Cloutterbucks, who resided with appellee's mother. Ms. Cloutterbuck was granted temporary custody of her daughter. Gary Cloutterbuck was permitted to telephone Ms. Cloutterbuck's home "three times a week for the sole purpose of talking with the child." He was never to telephone Ms. Cloutterbuck and was ordered to stay away from her relatives. The order was to expire on July 29, 1988, one year after its entry.[1] Mr.

1. Normally, the expiration of the order complained of would render this appeal moot. Indeed, such was the case with an earlier appeal by appellant from a contempt conviction for violation of a 1985 CPO. In this case, however, because appellant made a motion to expedite his appeal which we denied, we conclude that it is appropriate to hear this appeal although it might otherwise be moot.

In *Smith v. Smith*, 427 A.2d 928 (D.C.1981), we found that expiration of a thirty-day sentence for failure to pay child support under a continuing order did not render moot an appeal from a contempt conviction for failure to pay. The finding of non-mootness was based in part on the fact that the appellant had already served the full term of his contempt commitment due to this court's refusal of his request to stay the commitment order pending appeal. *See also Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n*, 251 U.S. App.D.C. 82, 88 & n. 11, 781 F.2d 935, 941 & n. 11 (1986); *cf. In re DeNeueville*, 286 A.2d 225, 226–27 (D.C.1972) (dismissing appeal of contempt adjudication because appellant did not request stay of execution pending appeal).

In addition, this court recognizes an exception to the doctrine of mootness for matters that are "capable of repetition, yet evading review." *See, e.g., United States v. Edwards*, 430 A.2d 1321, 1324 n. 2 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982).

The Supreme Court has noted two requirements for this exception in the absence of a class action: (1) that the challenged action be of too short a duration to be litigated fully prior to its cessation or expiration, and (2) that there be a reasonable expectation that the same complaining party be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), citing *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The "reasonable expectation" that an appellant may once again find himself in the situation from which he appealed has also been expressed as a "demonstrated probability." *Weinstein, supra*, 423 U.S. at 149, 96 S.Ct. at 349. The Supreme Court held that an appeal from denial of parole was moot where appellant had since been paroled and released and there was no "demonstrated probability" that he would ever again be subject to the parole system in North Carolina. However, the Court distinguished *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), in which the Court held that the termination of an economic strike that had given rise to a lawsuit did not render an appeal moot when the parties were involved in an ongoing collective bargaining relationship. We find the instant appeal more similar to *Super Tire* than to *Weinstein* by virtue of the parties' ongoing relationship and pattern of domestic violence.

The Cloutterbucks' domestic relations provide unfortunate confirmation that CPOs may re-

Cloutterbuck appeals from the order that resulted from the hearing at which he represented himself after the court's denial of his motion for appointment of counsel.

## II.

■ Civil Protection Order proceedings in the District of Columbia are, by definition, civil in nature.[2] Violation of a CPO is punishable by contempt, with a maximum penalty of six months in prison or a $300 fine or both, and at the contempt stage an indigent respondent is entitled to appointed paid counsel. It is well established in our jurisprudence that an indigent defendant in criminal proceedings has a right to counsel under the Sixth Amendment of the United States Constitution. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). That constitutional right is bolstered by the Criminal Justice Act, codified at D.C.Code §§ 11–2601 to –2609 (1981). The statute identifies categories of criminal defendants who are entitled to assistance of counsel if they are indigent. A recent decision of this court interprets the statute to mandate representation "[i]n all cases where a person faces a loss of liberty and the Constitution or any other law requires the appointment of counsel...." D.C.Code § 11–2602; *see Olevsky v. District of Columbia,* 548 A.2d 78 (D.C.1988) (if possibility existed of imprisonment as a result of criminal prosecution, actual sentence short of imprisonment did not cure constitutional violation where defendant was given neither assigned counsel nor the statutorily prescribed opportunity to show he was entitled to counsel). The statute refers to, but does not define, "cases covered by this Act where the appointment of counsel is discretionary." D.C.Code § 11–2602. However, the title of the statute indicates that the

right to counsel is, in any event, confined to criminal proceedings.

Appellant suggests that because his consent to the CPO may ultimately lead to imprisonment if he later violates the order, that possibility is sufficient to trigger a right to appointed counsel. We find, however, no authority for the proposition that counsel should be provided for respondents at a CPO hearing. The Supreme Court stated in *Scott v. Illinois, supra,* that "actual imprisonment is a penalty different in kind from fines or the *mere threat of imprisonment,"* and held that "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." 440 U.S. at 373–74, 99 S.Ct. at 1162 (emphasis added). We find that the possibility of imprisonment as a punishment for eventual violation of a CPO is too remote as of the time the order is entered to trigger a right to counsel. Furthermore, that outcome is contingent upon respondent's own subsequent behavior.

*Amicus curiae,* taking issue with appellant, notes that in several states violation of orders similar to CPOs furnishes a basis for *criminal* prosecution, as distinguished from contempt proceedings, yet even these states do not recognize a right to counsel at the time the initial order is entered. *See, e.g.,* CAL.CIV.PROC.CODE § 551 (Deering 1988); MD.FAM.CODE § 4–507 (1984 & 1987 Supp.). *Amicus* points out that if counsel are not appointed in CPO proceedings in those states where criminal prosecution may result from violation of the CPO, it follows that counsel need not be appointed in CPO proceedings where the

---

quire repetition. The record in this case reveals a relationship marked by repeated harassment and violent attacks. This unfortunate pattern supports the assumption that Mr. Cloutterbuck might be named again as a respondent in a CPO proceeding. Furthermore, because of the one year duration of CPOs, future orders may continue to evade review. Both of the orders already entered against Mr. Cloutterbuck had expired before the appeals came on to be heard. Accordingly, we exercise our discretion not to

dismiss this appeal as moot even though the underlying order expired pending appeal.

2. *See* D.C.Code § 16–1003 (1988). As initially enacted, the statute provided that petitioners would be represented by Corporation Counsel. Due to the great number of CPO petitions, the District of Columbia Council revised the statute in 1982 to allow petitioners to proceed *pro se.* Corporation Counsel continues to be involved in some cases.

result of violations would be contempt proceedings.

### III.

Appellant contends that independent of the threat of imprisonment, considerations of "fundamental fairness" give rise to a right to appointed counsel, given the nature of the interest at stake for CPO respondents. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court explored the issue of what level of procedural safeguards is constitutionally required when a proposed state action may deprive a person of an important interest.[3] The Court held that a determination of the appropriate level of procedural safeguards in a given situation requires a balancing of several factors: the interest that will be affected by government action; the risk of erroneous deprivation of that interest and probable value of additional procedural safeguards; and the government's interest, including fiscal and administrative burdens of additional or substitute procedures. 424 U.S. at 334–35, 96 S.Ct. at 902–03.

The CPO in this case gave exclusive custody of the Cloutterbucks' child to Ms. Cloutterbuck. It is clear that a parent's interest in the custody of his or her child is a liberty interest embodied within the protections of the Due Process Clause. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."). *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ("[T]he liberty thus guaranteed ... denotes not merely freedom from bodily restraint but also the right of the individual ... to engage in any of the common occupations of life, ... to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." (citations omitted)); *see also Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) ("The court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' ... 'basic civil rights of man,' ... and 'rights far more precious ... than property rights....'" (citations omitted)). In *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), the Court recognized the "commanding" right at stake, the right to rear one's children, and noted the seriousness of the deprivation involved in permanent termination of parental rights. Nonetheless, the Court declined to announce a flat requirement that indigent parents in danger of losing their parental rights be afforded appointed counsel. In making this determination, the Court applied the analysis of *Mathews, supra*, 424 U.S. at 335, 96 S.Ct. at 903. Thus, we will apply the *Mathews* analysis to this case.

Turning first to the interest at stake for a CPO respondent, we observe that the CPO in this case grants Juanita Cloutterbuck temporary custody of the Cloutterbucks' child. While this is an infringement on appellant's rights as a parent, the infringement is only temporary, and thus far less severe than the permanent termination of parental rights at issue in *Lassiter, supra*. To the extent that the order requires appellant to avoid the company of petitioner and her family, there is some restriction on his activity. Appellant's greater concern, however, seems to be that in agreeing

---

**3.** There is no question that the government's involvement in the issuance of a CPO rises to a level that satisfies the state action requirement of the Due Process Clause. *See Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1344–46, 99 L.Ed.2d 565 (1988). While a private party may file a petition for a CPO, the court ultimately decides whether to issue the order or not. It is, after all, the CPO itself, an order of the court, that infringes upon appellant's important interests. Moreover, the entire purpose of the CPO is to add the authority and contempt power of the court, a branch of the government, to deter the proscribed conduct.

to the consent order he placed himself in a situation which may result in his later being held in contempt of court and imprisoned.

Appellant draws a comparison to proceedings to terminate parental rights, pointing out that while appointed counsel is not mandated for indigent parties who face termination of such rights under the U.S. Constitution, a D.C. statute exceeds the constitutionally mandated level of procedural safeguards and provides for appointed counsel in all such cases. D.C.Code § 16–2304(b)(1) (1988 Supp.). He therefore asserts that in this jurisdiction a right to counsel may attach even when there is no immediate threat of imprisonment. The right to counsel conferred by § 16–2304(b)(1) is, however, strictly statutory in nature, and is limited to its terms.[4] Mr. Cloutterbuck does not come within those terms. CPOs do not of themselves necessarily implicate the termination of parental rights. Moreover, in abuse and neglect cases, the government rather than a private party prosecutes respondents. We decline to extend the right to appointed counsel to CPO proceedings instituted by a private party and involving a deprivation that is much less serious because it is only temporary.[5]

The second of the *Mathews* factors is the risk that a CPO will be entered erroneously. In the event of such an error, the detriment to respondent will end upon the expiration of the order. In addition, there are statutorily prescribed safeguards to guard against an erroneous outcome. CPO procedures in the District of Columbia are designed to ensure that respondents and petitioners alike have access to the process and can understand its results and implications without benefit of counsel. Committee on the Judiciary, Report to Council of the District of Columbia at 2 (May 12, 1982). Significantly, the judge in this case carefully explained the provisions of the CPO to ensure that respondent understood them before consenting. Moreover, when the court enters a protection order, the respondent receives a copy of the order bearing in bold type the legend "FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN FINE OR IMPRISONMENT."

Appellant contends that without counsel to advise him at the CPO stage, Mr. Cloutterbuck could not make the most effective arguments on his own behalf and was unable to appreciate the implications of his consent. The fact that appellant had already been involved in one CPO proceeding that culminated in a conviction for contempt[6] and thus should have been particularly aware of the rights at stake and the consequences of his consent to the order undermines that contention. Furthermore, the risk of an unsophisticated respondent going to jail for contempt due to the lack of understanding of the provisions of a CPO is minimal, because there must be a showing that violations were "knowing and wilful." *In re Thompson*, 454 A.2d 1324, 1326 (D.C.1982); *In re Kirk*, 413 A.2d 928, 930 (D.C.1980).

The third *Mathews* factor is the governmental interest at stake. In weighing this third factor, fiscal and administrative considerations are relevant but not determinative. We may look to the statute for the governmental interest in CPO proceedings, namely to protect potential victims of domestic violence. The legislature has determined that that interest is best served by a non-criminal process to which *pro se* petitioners have access. Even if it were otherwise appropriate for this court to modify

---

**4.** D.C.Code § 16–2304(b)(1) reads as follows:

When a child is alleged to be neglected or when the termination of the parent and child relationship is under consideration, the parent, guardian or custodian of the child named in the petition or in a motion to terminate is entitled to be represented by counsel at all critical stages of the proceedings, and, if financially unable to obtain adequate representation, to have counsel appointed in accordance with rules established by the Superior Court of the District of Columbia.

**5.** Appellant's argument is particularly weak in this regard since his daughter never resided with him but has always lived with her maternal grandmother.

**6.** *See Cloutterbuck v. Cloutterbuck*, No. 85–1729, CPO entered May 22, 1985, appeal dismissed March 18, 1987, *per curiam.*

the statutory scheme by providing for appointed counsel to represent respondents, that modification would undermine the legislative balance struck by creating a system providing unrepresented petitioners a prompt and uncomplicated means of securing protection. This consideration, even disregarding the potential cost of providing counsel for indigent respondents, weighs against the existence of a right to counsel.

Appellant, in a challenge to the fairness of CPO proceedings, asserts that most CPO petitioners are in fact represented by counsel, but affords no confirmation of that assertion. Appellee asserts that the contrary is the case. There are no official compilations to indicate what percentage of CPO petitioners appear *pro se,* but a local practice manual points out that "the vast majority of individuals appearing before the court do so without the assistance of counsel." The District of Columbia Practice Manual at 12–27 (1987). It is true that in her most recent petition, appellee was assisted by participants in a law school clinical program. Many CPO petitioners, however, are unrepresented, and this court must consider the balance systemwide, not merely the relative "advantage" between the parties to this appeal, in determining whether CPO respondents should have a right to appointed counsel. The statutory scheme offers a reasonable alternative to criminal proceedings, is "designed to promote victim access," and is not, in our view, unfairly weighted in favor of petitioners.

The possible benefit to CPO respondents from having appointed counsel to safeguard against an erroneous temporary restriction on their parental rights and other activities does not outweigh the substantial public policy interest in protecting the victims of domestic violence through a simple and expeditious proceeding. Furthermore, the risk of erroneous deprivations is small given the limited scope and duration of protective orders when it is compared to the burden a right to counsel for indigent

respondents might place upon the legislatively crafted system for controlling the problem of domestic violence.

Upon considering the interests involved in a CPO proceeding and the manner in which such proceedings are conducted, we conclude from the application of a *Mathews* analysis that indigent respondents in such proceedings need not be furnished appointed counsel.

*Affirmed.*

TERRY, Associate Judge, concurring:

I join in Judge Belson's opinion for the court, except for footnote 1. In my mind there can be no doubt that this appeal is moot because the civil protection order expired last July. I am unwilling to treat this case as presenting the type of controversy that is "capable of repetition, yet evading review," as that concept has evolved over the years. In particular, I do not think this case meets the second of the two criteria set forth in *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), because I cannot assume there is a "reasonable expectation" or "demonstrated probability" that Mr. Cloutterbuck will again be the subject of a civil protective order, notwithstanding that two such orders have been issued against him in the past.

Nevertheless, I would not dismiss this appeal as moot because there is a reasonable likelihood that this court may have dissuaded Mr. Cloutterbuck from taking steps to prevent its becoming moot. As Judge Belson points out, appellant made a motion to expedite this appeal, which this court denied on December 4, 1987. Thereafter appellee and *amicus curiae* filed their briefs with reasonable promptness,[1] but because of the congested state of our calendar, this case was not scheduled for argument until October 11, 1988, more than two months after the civil protective order expired. Our refusal to expedite this appeal, despite the very real possibility that it might become moot in the near future, may

---

**1.** Appellant had already filed his brief a couple of weeks before filing his motion to expedite the appeal.

well have misled Mr. Cloutterbuck into believing—mistakenly—that he could not renew, or seek reconsideration of, his motion to expedite. In my view, this is the kind of "unique" circumstance that prompted the Supreme Court in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962), and again in *Thompson v. Immigration & Naturalization Service*, 375 U.S. 384, 387, 84 S.Ct. 397, 398, 11 L.Ed.2d 404 (1964), to hold that an appeal otherwise subject to dismissal should be heard on its merits. *See also, e.g., Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Commission*, 251 U.S.App.D. C. 82, 88 & n. 11, 781 F.2d 935, 941 & n. 11 (1986). On that basis I join my colleagues in deciding this appeal on the merits, despite its mootness, and I concur without reservation in the rest of Judge Belson's opinion.