**Larry Jerome GREEN, Appellant,**

v.

**Maryleah GREEN, Appellee.**

**No. 92–FM–1483.**

District of Columbia Court of Appeals.

Argued April 14, 1994.

Decided June 2, 1994.

Christine M. Lee, with whom Shawn Moore, was on the brief, for appellant.

Laura A. Foggan, with whom Vicki L. Robinson and John C. Yang, were on the brief, for appellee.

Before TERRY, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

Appellant Larry Jerome Green ("the husband") appeals from an adjudication of contempt in the Family Division, Domestic Relations Branch, for violating a civil protective order ("CPO") requiring him to stay away from appellee Maryleah Green ("the wife") and their children. The husband contends his due process rights were violated because the wife's attorneys acted as the prosecuting attorneys during the intrafamily contempt proceedings and because the trial judge denied his request for witness statements pursuant to the Jencks Act.[1] We conclude that the intrafamily contempt proceeding against the husband was properly conducted and that the trial judge correctly ruled that the Jencks Act does not apply to witness statements under the circumstances presented here. Accordingly, we affirm.

## I.

The wife first petitioned for a civil protection order on February 26, 1991, alleging that when she was eight months pregnant the husband hit her head against a brick wall several times, threw her down a flight of stairs, and kicked her in and around the abdomen while threatening to kill her and the unborn child. During this incident, the husband also stabbed the wife's sister, who

---

1. 18 U.S.C. § 3500 (1988); Super.Ct.Crim.R. 26.2.

had attempted to intervene in defense of the wife. On the same day, the trial court entered a temporary CPO, ordering that the husband not "abuse, assault, molest, touch, harass, threaten or speak to[,] telephone, or attempt to ascertain the telephone number of the [wife and the couple's two children]." The husband was also ordered to stay away from the family, the marital home, and the children's school. On March 7, 1991, the trial court entered a twelve-month CPO, consented to by the parties, imposing conditions essentially the same as those included in the temporary CPO.[2]

On March 6, 1992, the wife sought an extension of the March 7, 1991, CPO.[3] The trial court granted that request on April 22, 1992, extending the CPO for an additional twelve months. After the husband appeared at the wife's residence and threatened her in August of that year, the wife moved, through counsel, to adjudicate the husband in contempt for violation of the April 22, 1992, CPO.

On October 16, 1992, a hearing on the contempt motion was held. After the wife's direct examination, counsel for the husband requested both a continuance and the production of so-called Jencks material, consisting of statements the wife made to District of Columbia Metropolitan Police officers and a message the wife had left on her attorney's answering machine. The trial judge ruled:

> [Jencks] ... does not apply, ... the petitioner is not the government, the petitioner is not the prosecutor, there is no applicability of the [Jencks] Act or [Super.Ct.Crim.] Rule 26.2 to the [wife]. Even if it [did] apply the Court is of the opinion that the [wife's] statement to the police officer is not something that would be in the exclusive control of the Government/petitioner. [The "statement" was] a phone call to the police department and

would not be covered by [Jencks] and the phone call to the lawyer, I believe, is a privileged communication and the [husband] would not be entitled to it. So the Court is convinced that there is no entitlement to the material under [Jencks].... This Court reads [Super.Ct.Intra–Fam.] Rule 8 as controlling entitlement to discovery in a contempt proceeding.

Later in the proceeding, during the course of a colloquy among the trial judge and counsel concerning the propriety of a continuance, the husband's counsel acknowledged that she "realized now that [Jencks] doesn't apply." Thereafter, the trial judge granted a continuance in order for the husband's counsel to submit interrogatories to the wife and to subpoena four police officers.

On the continued date, the husband's motion for reconsideration of the court's findings with respect to the Jencks issue was denied. The husband also moved to disqualify the wife's counsel from "prosecuting criminal contempt." The trial judge found that:

> the [wife's] counsel are not prosecutors but merely counsel assisting the [wife].... I note that in most contempt adjudications before the Court that I have presided over, most [of] the petitioners do not have counsel, [and] that they are before the Court seeking the assistance of the Court to effect the orders that have been previously given by the Court and I believe the language of our Court of Appeals in the [*Cloutterbuck v. Cloutterbuck*, 556 A.2d 1082 (D.C.1989)] decision drives home the importance of making ... access to this Court available to pro se litigants.... So I don't believe that the [wife] is a prosecutor in the first instance and the [Super.Ct.Intra–Fam.] Rule 12C provides that "the Court may request that Corporation Counsel represent the petitioner". The corollary to that must be that the petition-

---

2. The CPO also awarded temporary custody of the unborn child to the wife and suspended the husband's right to visit the other children pending his completion of a psychological evaluation and participation in an "appropriate counseling program."

3. As grounds for the extension, the wife alleged that the husband had violated parole, had been incarcerated based on that violation, and had failed to undergo psychological evaluation and counseling as required by the March 7, 1991, CPO.

er need not have counsel and in practice that's what usually happens, that the petitioner does not have counsel, so it is this Court's opinion that the petitioner's counsel are here to assist the petitioner and are not prosecutors and the Court is not going to disqualify the [wife's] counsel from participating in this proceeding.

Thereafter, the trial judge permitted the husband's counsel to *voir dire* the wife in order to determine which police officers might have taken statements from her regarding the August 22, 1992, incident. Following that examination, the trial judge granted a further continuance in order for the husband's counsel to subpoena the police officers with whom the wife had spoken. Counsel, however, was only able to serve one of the officers, who appeared and testified at the contempt proceedings held two days later. On October 23, 1992, the trial judge adjudicated the husband in contempt for violating the terms of the April 22, 1992, CPO and sentenced him to thirty-days incarceration. This appeal followed.[4]

## II.

■ The husband contends that he was denied a "fundamental" constitutional right to a public prosecutor when the trial judge permitted the wife's counsel to participate in the intrafamily contempt proceedings.

D.C.Code § 16–1003(a) (1989) provides:

Upon referral by the United States attorney, or upon application of any person or agency for a civil protection order with respect to an intrafamily offense committed or threatened, the Corporation Counsel may file a petition for civil protection in the Family Division. In the alternative to referral to the Corporation Counsel, a complainant on his or her own initiative may file a petition for civil protection in the Family Division.

Pursuant to the Intrafamily Proceedings Rules, a complainant may enforce a CPO by filing a motion for contempt and proceeding through counsel, or *pro se*, with a contempt hearing in the Family Division. *See* Super.Ct.Intra–Fam.R. 7(c) and 12; *see also* D.C.Code § 16–1005(f) (1989) (violation of a CPO is punishable as contempt).

In support of his argument, the husband relies on *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 809, 107 S.Ct. 2124, 2138, 95 L.Ed.2d 740 (1987), where the Supreme Court held, in the exercise of its supervisory authority, that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." (Footnote omitted.) We conclude, even assuming we are bound to follow *Young*, that it simply does not apply to the circumstances presented by this appeal.[5] The *Young* Court was reviewing the prosecution of a criminal contempt, pursuant to FED.

4. As a threshold matter, the wife contends the appeal is moot because the husband has already completed his sentence. An appeal, however, is not moot even though the sentence imposed has been served, if there is a possibility that collateral legal consequences based on the challenged conviction will follow. *See Brewster v. United States*, 271 A.2d 409, 411 (D.C.1970); *see also Mozingo v. United States*, 503 A.2d 1238, 1239 (D.C.1986) (appeal not moot even though defendant had successfully completed probation). We are satisfied that there are sufficient collateral consequences in this case to defeat the wife's mootness claim, *e.g.*, the contempt conviction could be considered by a judge in sentencing the husband if convicted of a subsequent offense. Further, because of the short duration of the sentence, it was impossible for the husband to present the case to this court for review before the expiration of the sentence. *See Cloutterbuck, supra*, 556 A.2d at 1083–84 n. 1. In addition, because the

Greens' "domestic relations provide unfortunate confirmation that CPOs [and contempt proceedings] may require repetition," yet because of their short duration "may continue to evade review," review of the instant appeal is appropriate. *Id.* Accordingly, we will consider appellant's appeal.

5. The husband contends this court is bound by decisions of the Supreme Court issued under its supervisory authority. While we have never so held, we did observe in an earlier case that "[a]lthough the District of Columbia courts are considered state courts for many purposes, they are established pursuant to article I of the United States Constitution and are part of the federal system. Hence, the Supreme Court's supervisory power probably encompasses the article I District of Columbia courts as well as the article III federal courts." *Hicks v. United States*, 362

R.Crim.P. 42(b), by private counsel for the plaintiff who had been appointed by the trial court for that purpose.[6] *See id.* at 793–802, 107 S.Ct. at 2130–2135. The criminal contempt proceedings in *Young* were the culmination of an elaborate "sting" operation, also conducted by the plaintiff's counsel, investigating the defendants' alleged violation of an injunction prohibiting them from manufacturing counterfeit leather goods. *Id.* at 791–92, 107 S.Ct. at 2129–2130. In announcing its rule, the *Young* Court was primarily concerned with the financial and tactical conflicts of interest presented by using plaintiff's counsel to prosecute the criminal contempt charges. *Id.* at 805–06, 107 S.Ct. at 2136–2137.

In contrast, the instant criminal contempt arose out of an intrafamily proceeding, conducted pursuant to local statutes and rules designed by the Council of the District of Columbia ("the Council") to expedite the application and, if necessary, the enforcement of CPOs in cases involving domestic violence. *See generally* D.C.Code § 16–1003(c), –1005(f); *see also* Super.Ct.Intra–Fam.R. 7(c) and 12. Those provisions reflect a determination by the Council that the beneficiary of a CPO should be permitted to enforce that order through an intrafamily contempt proceeding.[7] Further, this case does not present the potential for discovery abuses and

A.2d 111, 113 n. 7 (D.C.1976) (citing *Gay v. United States*, 411 U.S. 974, 93 S.Ct. 2152, 36 L.Ed.2d 697 (1973) (Douglas, J., dissenting from denial of *certiorari* )). The language in *Hicks* is *dicta*, and we have never been squarely presented with the question of whether we are bound by Supreme Court precedents that rest on its supervisory authority. We have declined to follow Supreme Court precedent in at least one line of cases, observing, with regard to mootness, that "the decisions of the Supreme Court ..., which arise in the context of the case or controversy requirement of Article III of the Constitution, are not binding on this court." *Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C.1991) (internal quotation and citations omitted). *See also Wheeler v. Goulart*, 623 A.2d 1177, 1178 (D.C. 1993) ("vacation of a decision by a deciding appellate court is not compelled after final completion of proceedings before that court" even though case was rendered moot). Because we conclude *infra*, that *Young* is distinguishable from the instant case, we do not decide whether this court is bound by decisions of the Supreme Court resting on its supervisory authority.

6. Super.Ct.Crim.R. 42(b) is virtually identical to the Fed.R.Crim.P. 42(b). *See also* D.C.Code § 11–946 (1989) ("The Superior Court shall conduct its business according to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure (except as otherwise provided in Title 23) unless it prescribes or adopts rules which modify those Rules."). The Superior Court Rules of Criminal Procedure by their terms do not apply to proceedings in the Intrafamily Branch of the Family Division. Super.Ct.Crim.R. 1(a). While Super.Ct.Intra–Fam.R. 1 provides that many of the Superior Court Rules of Civil Procedure apply in those proceedings, Super.Ct.Crim.R. 42(b) is not made applicable by that provision.

7. Because the Office of the Corporation Counsel was unable to meet the demand for the growing

number of CPOs, the Council amended the intrafamily offenses statute in 1982, authorizing victims of domestic violence to seek CPOs on their own initiative. *Cloutterbuck, supra,* 556 A.2d at 1084 n. 2. The Council did so in recognition that "[v]iolence among family members is a growing national problem as well as a local phenomenon. The public record on Bill 4–195 is replete with testimony regarding the seriousness and widespread nature of domestic violence. Domestic violence includes spouse abuse, child abuse, and parent abuse. It may be carried out by physical, sexual, or emotional violence." Report of the Council of the District of Columbia Committee on the Judiciary on Bill 4–195, The Proceedings Regarding Intrafamily Offenses Amendment Act of 1982, at 1 (May 12, 1982). Amendments to the statute were initiated in response to "the substantial number of cases coming to the Office of Corporation Counsel, the Citizens' Complaint Center, and then eventually to the Superior Court. Existing remedies have been shown to be inadequate in aiding victims in preventing further abuse." *Id.* at 2. Specifically, D.C.Code § 16–1003 was amended "to facilitate the effectiveness of the civil protection remedy by not requiring all alleged victims to go through the already heavily burdened Office of the Corporation Counsel. Thirty-six states currently have intra-family civil protection laws with a private right of action. The establishment of a private right of action in the D.C.Code is supported by virtually all commentators on Bill 4–195 including the offices of the U.S. Attorney and the Corporation Counsel." *Id.* at 10.

After oral argument in this appeal, the Office of the Corporation Counsel, as *amicus curiae*, filed a motion to supplement the record. In that filing, it was noted that "Corporation Counsel prosecutes less than 10 percent of the criminal contempt motions brought for violations of civil protection orders, and has only one counsel available for that duty." In a letter from the Corporation Counsel to the wife's counsel, at-

financial conflicts of interest the *Young* Court addressed because discovery under the Intrafamily Proceedings Rules is limited to the particular circumstances of the contumacious behavior.

We agree with Judge Geoffrey M. Alprin's observation in *Castellanos v. Novoa*, 117 Daily Wash.L.Rptr. 1189, 1194 (D.C.Super.Ct. April 27, 1989), which involved circumstances virtually identical to those presented in the instant appeal:

> [I]n most intrafamily matters which have reached the contempt stage, petitioner has been previously determined to be a victim of domestic violence and now seeks the court's assistance, through the statutorily authorized criminal contempt process, to protect her from respondent because he allegedly failed to comply with the provisions of the court's previous order and abused her again. This court is convinced that the *Young* Court could not possibly have envisioned the application of its rather sweeping language dealing with problems associated with private prosecution of contempt under the federal rules to the instant and most similar cases.

For all the reasons stated, therefore, we conclude that *Young* is inapplicable to the circumstances presented here.

The husband also contends that there is a Fifth Amendment due process right to a public prosecutor in a contempt proceeding of the type presented here. We know of no authority recognizing such a right, and the husband has cited none to us.[8] Indeed, the Supreme Court has recognized that the full panoply of protections normally due a criminal defendant are not required when a lesser charge is involved. *See, e.g., Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974) (right to a jury trial in a criminal contempt is not required if penalty imposed is six months or less); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (same); *see also Cloutterbuck, supra*, 556 A.2d at 1084–87 (husband not entitled to appointed counsel on motion for a civil protection order); *In re Wiggins*, 359 A.2d 579, 580 (D.C.1976) ("A criminal contempt proceeding is not a criminal prosecution, and consequently not all procedures required in a criminal trial are necessary in a hearing on a charge of contempt.") (citations and footnote omitted). Although the *Young* Court rejected the appointment by the trial court of an interested private party as counsel to prosecute a criminal contempt, it did

---

tached to the motion, it was further noted that "[t]his Office would be hard pressed to prosecute all of the contempt motions filed in D.C.Superior Court given the current limited state of our resources.... We have been unable to draw on the resources of the section that handles perhaps the most nearly analogous work, because the ten attorneys in that section handle approximately 1,000 abuse and neglect cases per month." Lastly, it was noted even the ʻvolunteer assistance efforts from other divisions of that office "could not possibly satisfy the need for the additional resources needed to prosecute all contempt motions." Thus, based on these observations, as well as the procedural scheme established for enforcing CPOs, we are satisfied that the Council intended that considerations supporting a private right of action to seek a CPO apply equally to a private right of action to enforce the CPO through an intrafamily contempt proceeding. *See* D.C.Code § 16–1005(f) ("Violation of any temporary or permanent order issued under this chapter and failure to appear as provided in subsection (a) shall be punishable as contempt.").

**8.** None of the cases relied upon by the husband are apposite. *Connally v. Georgia*, 429 U.S. 245,

250, 97 S.Ct. 546, 548–49, 50 L.Ed.2d 444 (1977), and *Tumey v. Ohio*, 273 U.S. 510, 533–34, 47 S.Ct. 437, 444–45, 71 L.Ed. 749 (1927), hold that a criminal defendant has a due process right to a disinterested *fact-finder*, not a disinterested prosecutor. The federal court decisions cited by the husband are inapplicable because in those cases the court was primarily concerned with inherent financial conflicts of interest presented by the appointment of a private prosecutor. *See In re Hipp, Inc.*, 895 F.2d 1503, 1508 (5th Cir.1990) (trustee of bankruptcy estate, appointed to prosecute contempt, has a duty to pursue the financial interests of the estate as opposed to the public interest in vindicating the court's authority); *Ganger v. Peyton*, 379 F.2d 709, 713 (4th Cir.1967) (prosecution of assault charge by private attorney, who was also representing wife in divorce proceedings, improper as his judgment in the criminal prosecution could be influenced by "possibility that the size of his fee would be determined by what could be exacted from defendant").

not create a constitutional right[9] to a public prosecutor in a contempt proceeding. Moreover, the procedures mandated by the Intrafamily Offenses Act and the Intrafamily Proceedings Rules[10] provide adequate protections to alleged contemnors. Accordingly, we hold that there is no constitutional right to a public prosecutor in an intrafamily contempt proceeding.

## III.

■ The husband also contends his due process rights were violated because he was denied access to statements the wife made to police officers, and a message the wife had recorded on her attorney's telephone answering machine, which he claims were discover-

able pursuant to Super.Ct.Crim.R. 26.2.[11] The trial judge rejected that contention, ruling that Super.Ct.Crim.R. 26.2 is not applicable to intrafamily contempt proceedings and private attorneys.

Super.Ct.Intra–Fam.R. 1 provides that "[t]hese rules govern in all proceedings regarding intrafamily offenses as defined in Title 16, Section 1001 et seq. of the D.C.Code," and incorporates by reference numerous rules of civil procedure. Thus, by the terms of the Intrafamily Proceedings Rules, Super.Ct.Crim.R. 26.2 does not apply. Presumably, the rule-makers could have provided otherwise; however, they chose an alternative procedure for obtaining discovery. For example, under Super.Ct.Intra–Fam.R.

9. In reversing, the *Young* majority relied on its supervisory power in order "to avoid the necessity of reaching any constitutional issues." *Young, supra*, 481 U.S. at 809 n. 21, 107 S.Ct. at 2139 n. 21.

10. Several rules govern contempt adjudications in intrafamily proceedings. Notice requirements are contained in Super.Ct.Intra–Fam.R. 7:

(c) *Motion for contempt for violation of protection order.* When a motion for contempt is filed alleging violation of a civil protection order or temporary protection order, the Intrafamily Clerk shall issue a notice of hearing and order directing appearance. The motion shall be in writing and shall be supported by affidavit. A statement of points and authorities shall not be required for a motion for contempt. The notice of hearing and order directing appearance shall be served in the same manner set forth in SCR Intrafamily 3 [Service of process]. Punishment upon a finding of contempt shall be limited as provided in SCR Intrafamily 12(e).

Hearing requirements are contained in Super.Ct.Intra–Fam.R. 9 and 12. Rule 9 provides:

(b) *Evidence.*

\* \* \* \* \* \*

(2) Non-jury hearing. The Court shall, without a jury, hear and adjudicate petitions for civil protection orders and all motions made pursuant to these rules.

(3) Who may present evidence.

(A) Whenever a petition for a civil protection order or a motion pursuant to these rules is filed, both the petitioner and the respondent may present evidence, including testimony of themselves and other witnesses as well as physical evidence.

Rule 12 provides:

(c) *Contempt hearing procedure.*

(1) The respondent has the right to counsel and shall be so advised.

(2) Anytime the judge contemplates imposing a sentence of imprisonment if the contempt is proven beyond a reasonable doubt, the judge may appoint counsel for the respondent. The court may also request that the Corporation Counsel represent the petitioner.

\* \* \* \* \* \*

(4) Both parties have the right to present sworn testimony of witnesses and other evidence in support of or in opposition to the motion. The respondent may not be compelled to testify or give evidence.

Super.Ct.Intra–Fam.R. 13 governs the rights of appeal:

(a) *Appealable order.* Any final order issued pursuant to D.C.Code § 16–1005, any order granting or denying extension, modification, or rescission of such order, or any adjudication of contempt shall be appealable to the District of Columbia Court of Appeals and shall be governed by the rules of the Court.

11. That rule provides, in part, that:

[a]fter a witness other than the defendant has testified on direct examination, the Court, on motion of a party who did not call the witness, shall order the *prosecutor* or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Super.Ct.Crim.R. 26.2(a) (emphasis added). That rule is the embodiment of the Jencks Act, 18 U.S.C. § 3500(c), in the District of Columbia. *Washington v. United States*, 499 A.2d 95, 99 (D.C.1985).

8(a) "[r]equests for reports filed with the Metropolitan Police Department may be made directly to the department." Any statements the wife made to police officers with respect to the actions underlying the contempt adjudication thus would have been discoverable by filing a request for any written reports. *See* D.C.Code § 16–1032 (1993 Supp.) ("Any law enforcement officer who investigates an intrafamily offense shall file a written report of the incident with the District of Columbia Metropolitan Police force ('Police force'), including the law enforcement officer's disposition of the case. The Police force shall maintain the written report."). Here, no such request for the wife's statements was ever made of the Department, and we are unwilling to conclude that the husband was denied discovery he might have been entitled to receive when no request was made. *See United States v. Agurs,* 427 U.S. 97, 114, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976) (defendant was not deprived of a fair trial by prosecutor's failure to turn over record where it appeared that record was not requested by defense counsel); *Mangrum v. United States,* 418 A.2d 1071, 1077 (D.C.) (same), *cert. denied,* 449 U.S. 997, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980).

 In addition, by its own terms, Super.Ct.Crim.R. 26.2 applies only to the "prosecutor," not private attorneys or *pro se* plaintiffs. The commentary to the rule observes that "prosecutor" means either the United States Attorney *or* Corporation Counsel. Thus, Super.Ct.Crim.R. 26.2 would not apply, in any event, where the complainant is proceeding *pro se* or is represented by private counsel. Moreover, we agree with the trial judge that the tape recorded message left on the wife's attorney's answering machine is protected by the attorney-client privilege. *See Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 551 (D.C.1981) (confidential disclosure of information by client to attorney in order to obtain legal advise is privileged from disclosure).

 Finally, it is well established that discovery allowed pursuant to the Jencks Act has no constitutional dimension. *See, e.g., United States v. Augenblick,* 393 U.S. 348, 356, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969); *Palermo v. United States,* 360 U.S. 343, 345, 79 S.Ct. 1217, 1221, 3 L.Ed.2d 1287 (1959); *see also* 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 436, at 579 (1982) (the rules announced in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), are based on the Supreme Court's standards for administering criminal cases in federal courts). Thus, even if Super.Ct.Crim.R. 26.2 applied to intrafamily proceedings, denial of evidence sought pursuant to that rule cannot not serve as a basis for a claimed constitutional violation. In sum, we conclude that the trial judge did not err in ruling that Super.Ct.Crim.R. 26.2 was inapplicable to an intrafamily contempt proceeding.

*Affirmed.*