Wayne MABRY, Appellant,

v.

Tijuanna DEMERY, Appellee.

No. 95–FM–1699.

District of Columbia Court of Appeals.

Argued Feb. 13, 1997.
Decided Jan. 29, 1998.

Andrew Philip McGuire, appointed by the court, for appellant.

Sharon L. Davis, Washington, DC, for appellee.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

Appellant, Wayne Mabry, appeals from his conviction for criminal contempt for violation of a civil protection order. His principal argument for reversal is that the trial court convicted him upon a standard of proof less than beyond a reasonable doubt. We agree and reverse and remand.

I.

Mabry and appellee, Tijuanna Demery, had been romantically involved for a long time. On June 16, 1994, Demery filed a petition for a Civil Protection Order (CPO) pursuant to D.C.Code § 16–1005 (1997) alleging that Mabry, with whom she had a child, had threatened her and punched a hole in the wall of her apartment. On July 7, 1994, the trial court (Judge Linda Hamilton) granted Demery's petition and ordered Mabry, for a period of twelve months, to "not molest, assault, or in any manner threaten or physically abuse [Demery] ... [nor] damage any

property of [Demery], nor do damage to their residence."

On June 5, 1995, police officers arrested Mabry at Demery's apartment. Demery filed a motion requesting the court to adjudicate Mabry in criminal contempt for violation of the CPO in that Mabry assaulted her on June 5, 1995 by punching her and attempting to suffocate her by covering her nose and mouth. She also alleged that Mabry had assaulted and threatened her and damaged her door in November 1994. At a June 19th hearing on the motion, the trial court (Judge Bruce Mencher) entered an order extending the civil protection order for a period of twelve months with the consent of Mabry.

On August 7, 1995, the police responded to a call at the apartment, where they found Mabry and charged him with unlawful entry. The charge was not papered by the U.S. Attorney's office, but Mabry appeared in court to respond to Demery's emergency motion to modify the CPO. Demery alleged in that motion that Mabry was harassing her, entering her apartment without permission and refusing to leave. The trial court [Judge George Mitchell] entered another CPO with the additional provisions that Mabry stay away from Demery's home and her mother's home. The court also awarded Demery temporary custody of the parties' minor child and made a provision for Mabry to retrieve his belongings from the apartment.

On September 19, 1995, Demery filed an amended motion to adjudicate Mabry in contempt for violations of the CPOs of July 7, 1994, June 19, 1995, and August 8, 1995. In that motion, Demery made additional allegations that in August of 1995, Mabry threatened her, entered her apartment without her permission, and made harassing and abusive telephone calls to her. She also alleged that on September 17, 1995, Mabry came to her apartment in violation of the "stay away" provision of the order of August 8, 1995.

At the evidentiary hearing on the motion on October 3, 1995 Demery testified that, in November 1994, Mabry punched her after coming home intoxicated. Mabry denied that he struck Demery, but he admitted

pushing her in self-defense. He testified that he felt threatened by Demery. Crediting Demery's testimony, the trial court (Judge Zinora Mitchell–Rankin) found Mabry guilty of contempt for violating the CPO in November 1994. The court sentenced him to a period of incarceration of forty-five days, suspended the execution of sentence and placed Mabry on probation for one year with various conditions, including attending parenting classes and maintaining full-time employment. The court also ordered Mabry to appear for a child support hearing on November 15, 1995 and to "bring a statement from employer detailing wages per year and health insurance, bring 3 pay statements, bring SSI disability and tax records for 1994 and 1993. Fill out a financial statement."

Demery testified that in September 1995, Mabry telephoned her and asked if he could come over to get his clothes. Demery told him that it was not a good time, but that he could come later in the day. However, Mabry went an hour later and attempted to force his way in. Mabry and Demery's sister got into an altercation, and the police came and arrested Mabry. Mabry testified that he did not intend to violate the "stay away" order, and his counsel argued essentially that the invitation led to a misunderstanding about his obligations under the CPO. The trial court found Mabry guilty of contempt for violating the CPO in September 1995 and sentenced him to sixty days incarceration with execution of sentence suspended and one year of probation. The court also ordered that Mabry to pay for the damage to Demery's door.[1]

## II.

Mabry argues that the trial court erred in convicting him of criminal contempt applying a standard of proof of less than proof beyond a reasonable doubt. The record is clear that the trial court rejected expressly Mabry's argument that the proceeding against him was for criminal contempt, subjecting him to criminal penalties and requiring that the charges be proven beyond a reasonable

---

1. The court acquitted Mabry of the violation which was alleged to have occurred in August

because Demery did not sustain her burden of proof.

doubt. The trial court held that it was "a civil contempt issue" and therefore, proof beyond a reasonable doubt was not required. This was error.

"Criminal contempt ... is a sanction imposed to punish a contemnor for intentionally violating a court order." *Zapata v. Zapata*, 499 A.2d 905, 908 (D.C.1985) (citing *Cheff v. Schnackenberg*, 384 U.S. 373, 377–78, 86 S.Ct. 1523, 1524–25, 16 L.Ed.2d 629 and *Douglass v. First Nat'l Realty Corp.*, 177 U.S.App. D.C. 409, 413, 543 F.2d 894, 898 (1976)). In civil contempt, the court imposes a sanction in order to force compliance with its order or to compensate for damages sustained as the result of disobedience to the court's order. *Zapata*, 499 A.2d at 908 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)). "[A] judgment of civil contempt is remedial in nature and does not require a finding of intent." *In re Gorfkle*, 444 A.2d 934, 939 n. 3 (D.C.1982) (citation omitted). On the other hand, the offense of criminal contempt requires proof of a contemptuous act and a wrongful state of mind. *Id.* at 939. "Each of these elements must be proven beyond a reasonable doubt." *Id.*

■ Here, Mabry was before the court charged with disobeying a court order and subject to a sentence of incarceration as punishment for the offense. *See Zapata, supra*, 499 A.2d at 908; *see also United States v. Dixon*, 509 U.S. 688, 701 & 701 n. 5, 113 S.Ct. 2849, 2858 & 2858 n. 5, 125 L.Ed.2d 556 (1993) (recognizing violation of a CPO as the substantive offense of criminal contempt). These elements render the proceeding one for criminal contempt requiring proof of each element of the offense beyond a reasonable doubt. *Gorfkle, supra*, 444 A.2d at 939. The Intra–Family Rules of Superior Court provide a range of protections for persons charged with contempt for violation of a protection order, including the right to counsel. *See* Super. Ct. Intra–Fam. R. 12. Rule 12(c)(2) references the criminal standard of proof, providing that "[a]nytime the judge contemplates imposing a sentence of imprisonment *if the contempt is proven beyond a reasonable doubt*, the judge may appoint counsel for the respondent." (Emphasis added.)

■ Recognizing that the trial court failed to apply the required standard of proof, Demery argues that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Under the test in *Chapman*, constitutional error can be held harmless only if the reviewing court can "declare a belief that it was harmless beyond a reasonable doubt." *Id.* However, some constitutional errors render the trial fundamentally unfair and will require reversal even if the evidence unquestionably established guilt, *e.g.*, complete deprivation of counsel. *White v. United States*, 613 A.2d 869, 875 (D.C.1992) (en banc) (citation omitted). The Supreme Court has held that a constitutionally deficient reasonable doubt instruction cannot be harmless error. *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993). The rationale underlying this holding is that the Sixth Amendment requires an actual jury finding of guilty, not the appellate court's speculation about what the jury might have determined had a constitutionally sufficient instruction been given. *Id.* at 280, 113 S.Ct. at 2082. As the Supreme Court further explained:

> Since ... there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* [defendant] guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough.

*Id.* (citation omitted). Such an error would deprive a defendant of his constitutional right to a trial by jury.

Demery argues that the same concerns are not present in a non-jury trial. She contends that the trial court's explanation for its findings provide an adequate basis for evaluating whether the error was harmless beyond a reasonable doubt. Even assuming that a different standard applies in the context of a non-jury trial, and we do not decide that question, we are unable to glean from this record that the trial court's factual findings and conclusions of law would have been the same had it applied the standard of proof beyond a reasonable doubt. Put another way, whether the court would have rejected Mabry's claims of self-defense and unintentional violations of the orders under the more rigorous standard of proof is not clear from the record. Therefore, we cannot "confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Therefore, the case must be remanded for further proceedings consistent with this opinion.

### III.

Mabry argues that he was denied discovery pursuant to Super. Ct.Crim. R. 16. Since this issue will remain in further proceedings, we address it. Mabry contends that Demery has the same obligation under Super. Ct.Crim. R. 16 to provide discovery as the prosecutor in a criminal case. In *Green v. Green,* 642 A.2d 1275 (D.C.1994), the appellant argued that he was denied discovery pursuant to Super. Ct.Crim. R. 26.2. This court held that the rule only applied to "prosecutors" and therefore, "would not apply, in any event, where the complainant is proceeding *pro se* or is represented by private counsel." *Id.* at 1282. Rule 16 also provides for disclosure of evidence to the accused by the government and refers to "government" and "prosecutors", rather than *pro se* litigants or those represented by private counsel. The same rationale obtains here as in *Green.* Therefore, we find no error in the trial

court's ruling that Mabry was not entitled to discovery from Demery under Rule 16.

### IV.

Finally, Mabry argues the trial court exceeded its authority in ordering as a condition of probation that he appear for a child support hearing and bring with him information concerning his financial means. In *Powell v. Powell,* 547 A.2d 973 (D.C.1988), this court held that an expansive reading of the Intra–Family Offenses Act (Act), D.C.Code §§ 16–1001 to –1006, as intended by the legislature, authorizes the court to require monetary relief where necessary for "an effective resolution of the matter." *Id.* at 974. In *Powell,* the petitioner argued that she and her children were dependent upon her husband for support which was a major factor in the perpetuation of their long history of violence. *Id.* Given the history of family violence, she asserted that the only effective remedy was for the family to live separately at a place unknown to him, or alternatively for the home to be made financially and physically secure from him. *Id.* This court held that the trial court erred in concluding that it had no authority to award monetary relief in those circumstances. *Id.* at 975. However, it declined to remand because the purpose of the monetary award must be to accomplish an effective resolution of the family violence matter, and the lapse of time eliminated that purpose.[2] *Id.* at 975.

In this case, unlike *Powell,* there is no claim or showing that a support award was necessary for a resolution of the family violence matter or the contempt proceeding. Here, the matter before the court was one for criminal contempt which carried criminal penalties. An attempt to attach to the stay of execution of the commitment order extends beyond the rule contemplated in *Powell.* Demery is not without a remedy to seek an order for child support under the expeditious process available in the Family Division.

---

**2.** This court determined specifically that an award at the time "could have no such retroac-

tive effect." *Powell, supra,* 547 A.2d at 975.

For the foregoing reasons, the order adjudicating Mabry in contempt is reversed and remanded for a new trial for criminal contempt, or alternatively, for new findings of fact and conclusion of law, applying the standard of proof, beyond a reasonable doubt, to the existing record.

*Reversed* and *Remanded.*